***Exhibit 5***

On the 12th March 1771, the defendants preferred their petition to the Lord Chancellor, setting forth (amongst other things), that the defendants' solicitor had shewn the land to Mr. Bishop, and that he was ready to make his report concerning the same; and therefore prayed, that Mr. Chauvet's petition might be set down to be heard upon Mr. Bishop's report. and that the same might be dismissed, and the defendants paid their costs.

On the 20th March 1771, both petitions came on, and Mr. Bishop attended in his place at the bar, and delivered in Court a report in writing, which was offered to be read, but objected to by the Solicitor General (Mr. Wedderburne), Counsel for Mr Chauvet, who insisted that the report ought to be filed, and confirmed, before the defendants had a right to ground any order upon it; and that Mr. Chauvet, after the report was filed, had a right to take exceptions to it. Mr. Ambler, for the defendants, insisted that the reference was only to procure better evidence of a fact, than had been made out by affidavit, and that Chauvet had not any more right to require this evidence, in the shape of a report to be filed, and confirmed, than he would have had to require Mr. [454] Bishop's affidavit to be filed, and confirmed, if he had thought fit, to make one to the same effect as his report; * and that he might have done so if he had pleased, or even made a verbal report at the bar, or none at all; for that the Court did not require him to make any report, but only directed the petition to stand over until the defendants' solicitor had shewn the land; and that any exception Mr. Chauvet had to the report, might be taken at the bar.

The Solicitor General in reply insisted, that Mr. Bishop was, in fact, an arbitrator between the parties; that any reference to an arbitrator required an award, or report in pursuance of it: that, by the course of the Court, such award, or report ought to be filed, that any party aggrieved might except thereto, so as to put the whole matter upon record; and that, if it were otherwise, the injured party would be without evidence upon an appeal. Upon his Lordship's consulting the bar, and Mr. Howard, who then sat as Register, they coincided with Mr. Solicitor General, and the report was ordered to be filed.

The report was accordingly filed; and on the 9th of April 1771, an order was made to confirm it nisi; Mr. Chauvet filed exceptions to the report, which were argued on the 15th July 1771, and over-ruled.

## Botts *v.* Verelst.

(Reg. Lib. A. fol. 327.) 19 July 1771. Lord Bathurst, C.

Application to examine a witness *de bene esse*, upon affidavit he was going to Scotland. After long debate, it was ordered; Scotland, although not [455] out of the realm, being out of the jurisdiction of the Court to compel the witness to attend to be examined, when he arrived there.

[Mews' Dig. Evidence, VII, 4, a, ii. See Blackwood v. Burrowes, 1842, Flan. & K. 630.]

## Smith *v.* Clarke.

24 Aug. 1771. Lord Bathurst, C.

Notice of motion for an injunction to stay the working of coal mines, saved, until the first seal after Michaelmas, the defendant undertaking not to do any thing in the mean time. After the seals subsequent to Trinity Term were over, the defendant began to sink a pit. On application by petition, an injunction was granted.

## Goodeson *v.* Gallatin.

10 Dec. 1771.

The origin of the jurisdiction of this Court in regard to injunctions, and to what extent.

Upon application for an injunction:

*Lord Bathurst, C.*, said, that when this Court first granted injunctions, it seems to

* Mr. Ambler was mistaken; for had it been by way of affidavit, by the standing orders of the Court, no affidavit is to be given in evidence until it is filed, and put upon record; which seems highly proper; for should a deponent be found to have sworn falsely, his affidavit, unless filed, might not be forthcoming, on which to indict him.—J. D.

have taken its jurisdiction from the writ of prohibition of waste; and to have extended it against a tenant for life, or a tenant for years from ploughing ancient meadows, from throwing down ancient inclosures, which, though not strictly, is of the nature of waste; from printing books, and from exercising new inventions; from the working of mines, possessing bills now out of use in this kingdom, but still in use in Ireland; and this Court will grant an injunction whether covenant, or no covenant. The grantor of a common overstocks it; this Court will grant an injunction. 2 Vern. 116.

[456] DURAND *v.* HUTCHINSON.

20 Jan. 1772.

Motion to amend a bill by striking out a party, and making him a defendant, after bill dismissed.

The Court gave the plaintiff leave to amend, paying all costs.

ERRINGTON *v.* EVANS.

7 Feb. 1772.

The testator's making of a bond debtor one of his executors, does not extinguish the debt.

The question in this cause was, whether a bond debt due to the testator from one of the defendants, who was one of the executors, and proved the will, was extinguished.

It was argued by Mr. Attorney General, that a personal estate, of which the bond is part, is in law a gift to the executor; but that it was a gift operating only by conclusion in law, and not as the intent of the testator.

In Wankford *v.* Wankford, in Salkeld 299, it is expressly laid down, that making a debtor an executor, is making him a specific legatee as to the debt, and not to be taken away from him to make other legatees equal to him, nor for the benefit of a residuary legatee.

In Brown *v.* Selvyn the words of the will were: "As to the rest, residue, and remainder of my personal estate, I give the same, and every part thereof, unto such of my executors as shall duly take on him, or them the execution of my will."

[457] *Lord Chancellor.*—I take it upon the foot of the will.

Where an obligee makes an obligor one of the executors, and takes no notice of the bond, but devises the residue of the estate to others, I am clear it is not an extinguishment of the debt, though at law it will be so, because a personal demand once suspended is not to be resumed.

Therefore, declare that the bond is to be considered as a debt subsisting at the death of the testator, and to be accounted for as his personal estate; and let the defendant Evans account accordingly.

CLARE HALL *v.* ORWIN.

22 Feb. 1772.

The question in the cause being between persons in their ecclesiastical capacity, this Court would not interfere, but left it to the Ecclesiastical Court, as being the proper Court to determine it.

The bill was filed against several lessees, and vicars for tythes in kind.

By the defendants it was contended, that the question being between ecclesiastical persons, it ought to be determined by the Ecclesiastical Courts.

The plaintiff, on the contrary, insisted, that a Court of Equity had a jurisdiction, and, in reality, was the proper Court, and quoted a passage out of Bishop Gibson's works.

The Bishop says, though there is not any reason that the lay fee should not be subject to ecclesiastical jurisdiction, as well as the Exchequer; yet the Courts at Westminster have so often determined against it, that it is evident the Ecclesiastical Courts have not such jurisdiction.

[458] The cases cited were, Twiss *v.* Brazen Nose College, 328; Brook, Tit. Jurisdiction, placito 9; Drake *v.* Taylor, Strange Rep. 87.

*Lord Chancellor.*—This bill is brought by Clare Hall against lessees, and vicars for tythes of corn.