IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| RADIAN MEMORY SYSTEMS LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | Civil Action No.: 2:24-cv-1073<br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Radian Memory Systems LLC submits this notice of supplemental authority for the Court's consideration on Radian's Motion for Preliminary Injunction (Dkt. 43). This past Friday (June 27, 2025), the United States Supreme Court issued two decisions that are relevant to Radian's Motion, attached herein as Exhibits A and B. Given the length of the decisions, and for the Court's convenience, Radian highlights below the pertinent parts of the decisions and the corresponding relevant briefing on the Motion.

**1.** *Trump v. CASA, Inc.*

In *Trump v. CASA, Inc.*, No. 24A884, -- U.S. --, 2025 WL 1773631 (June 27, 2025), the Supreme Court reaffirmed a line of cases that direct courts to use 18th-century case law in considering injunctions. Radian relies on this line of cases while Samsung has argued that they were "refute[d]" by *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). Samsung Opp. at 14–16 (relying in large part on *VidStream LLC v. Twitter, Inc.*, No. 2024-2265, 2024 WL 4820802 (Fed. Cir. Nov. 19, 2024) (non-precedential) (also failing to address Supreme Court

1

case law directing courts to consider 18th-century equity principles)). In *Trump v. CASA*, the Supreme Court held that federal courts lack the power to issue universal injunctions because the English Court of Chancery did not issue universal injunctions (or anything sufficiently analogous to them) circa 1789. 2025 WL 1773631, at *4, Slip Op. at 1–2. Along the way, the Court reaffirmed several crucial holdings relevant to part of Radian's motion for injunctive relief:

    (a).    A federal court's equitable jurisdiction and authority are governed by and limited in time to that conferred by the Judiciary Act of 1789, ch. 20, 1 Stat. 73, which requires courts "still today" to administer the system of judicial remedies that was being administered by the English Court of Chancery in 1789, unless Congress has subsequently altered or augmented those traditional principles. *Trump v. CASA*, 2025 WL 1773631, at *5–6, *13, Slip Op. at 4–6, 21 (citing *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999); *Guaranty Tr. Co. v. York*, 326 U.S. 99, 105 (1945); *Payne v. Hook*, 74 U.S. (7 Wall.) 425, 430 (1869) ("The equity jurisdiction conferred on the Federal courts is the same that the High Court of Chancery in England possesses"); *Boyle v. Zacharie & Turner*, 31 U.S. (6 Pet.) 648, 658 (1832) ("[T]he settled doctrine of this court is, that the remedies in equity are to be administered, not according to the state practice, but according to the practice of courts of equity in the parent country")); *see also* 2025 WL 1773631, at *7 n.6, *8 n.7, Slip Op. at 7 n.6, 9 n.7 (noting that judicial decisions from the founding era are "dispositive" when it comes to "equitable authority exercised under the Judiciary Act"); 2025 WL 1773631, at *8 n.9, Slip Op. at 11 n.9 (noting that the notion of a "dynamic equity jurisprudence" represents the *dissent* in *Grupo*); 2025 WL 1773631, at *14, Slip Op. at 23 ("Observing the limits on judicial authority— including, as relevant here, the boundaries of the Judiciary Act of 1789—is required by a judge's oath to follow the law."); *accord* 2025 WL 1773631, at *15, Slip Op. at 1–2 (Thomas, J., joined

by Gorsuch, J., concurring) (noting that traditional equity from *c.*1789 is "dispositive"); 2025 WL 1773631, at *37, Slip Op. at 29 (Sotomayor, J., joined by Kagan & Jackson, JJ., dissenting) (recognizing the majority's framing of the scope of equitable jurisdiction when criticizing the Court for "freezing in amber the precise remedies available at the time of the Judiciary Act"); 2025 WL 1773631, at *44–45, Slip Op. at 2–3 (Jackson, J., dissenting) (recognizing the majority's framing of the scope of equitable authority when criticizing the Court for relying on "impotent English tribunals," *i.e.*, the Court of Chancery *c.*1789, and thereby requiring "mind-numbingly technical [historical] quer[ies]"); 2025 WL 1773631, at *48, Slip Op. at 9–10 (Jackson, J., dissenting) (faulting the Court, at least in suits brought against the Executive Branch, for the Court's "cramped characterization of the Judiciary's function" by resorting to, as its "sole basis," "the practice of the High Court of Chancery in England"). *Compare with* Radian Motion at 8–16.

(b). The Supreme Court also endorsed an in-chambers opinion of Chief Justice Roberts, *Maryland v. King*, 567 U.S. 1301, 1303 (2012), where he had applied a *per se* rule that irreparable harm to the government, on an application to stay an injunction, always follows when a federal court enjoins enforcement of a statute. In *Trump v. CASA*, the Court similarly concluded that a federal court *per se* irreparably harms the Executive Branch when it enjoins the Executive from effectuating its policies with injunctions that exceed the authority conferred by the Judiciary Act of 1789. 2025 WL 1773631, at *15, Slip Op. at 25; *see also* 2025 WL 1773631, at *31, Slip Op. at 15 (Sotomayor, J., joined by Kagan & Jackson, JJ., dissenting) (characterizing the Court's decision as holding that "every overbroad injunction necessarily causes irreparable harm sufficient to warrant emergency intervention" by a court); *see also* 2025 WL 1773631, at *31, Slip Op. at 17 (Sotomayor, J., joined by Kagan & Jackson, JJ., dissenting)

(discussing *Maryland v. King*). Both decisions demonstrate that there can be broad categories where irreparable harm exists as a matter of law. *Compare with* Radian Motion at 15; Radian Reply at 3–4.

**2.** *Mahmoud v. Taylor*

Second, in *Mahmoud v. Taylor*, No. 24-297, -- U.S. --, 2025 WL 1773627 (June 27, 2025), the Court reaffirmed that there can be broad categories of rights for which infringement constitutes irreparable harm as a matter of law: "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at *24, Slip Op. at 41 (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (*per curiam*)). *Compare with* Radian Motion at 15–16; Radian Reply at 3–4.

| | |
|---|---|
| Dated: July 3, 2025 | Respectfully submitted, |
| | /s/ *Austin Curry* |
| | Bradley W. Caldwell |
| | Texas State Bar No. 24040630 |
| | Email: bcaldwell@caldwellcc.com |
| | Jason D. Cassady |
| | Texas State Bar No. 24045625 |
| | Email: jcassady@caldwellcc.com |
| | John Austin Curry |
| | Texas State Bar No. 24059636 |
| | Email: acurry@caldwellcc.com |
| | Hamad M. Hamad |
| | Texas State Bar No. 24061268 |
| | Email: hhamad@caldwellcc.com |
| | **CALDWELL CASSADY & CURRY P.C.** |
| | 2121 N Pearl Street, Suite 1200 |
| | Dallas, TX 75201 |
| | Telephone: (214) 888-4848 |
| | |
| | Andrea L. Fair |
| | State Bar No. 24078488 |
| | **MILLER FAIR HENRY, PLLC** |
| | 1507 Bill Owens Parkway |
| | Longview, TX 75604 |

(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: andrea@millerfairhenry.com

**ATTORNEYS FOR PLAINTIFF RADIAN MEMORY SYSTEMS LLC**

## CERTIFICATE OF SERVICE

I certify that on July 3, 2025 a true and correct copy of the above and foregoing document was served on counsel of record via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ *Austin Curry*
Austin Curry