*Exhibit A*

America's leading patent law source

# Back to 1789: How Founding-Era Equity Could Resurrect NPE Injunctions

July 7, 2025    paid    Dennis Crouch

by Dennis Crouch

The pending *Radian Memory* case could fundamentally reshape patent litigation. This is a follow-on article about the preliminary injunction motion in **Radian Memory v. Samsung** pending before Judge Gilstrap in the Eastern District of Texas. The patentee-plaintiff is a non-practicing entity — but still argues that it has a right to injunctive relief based upon traditional equitable principles, even under the requirements of *eBay*. In June, the DOJ and USPTO filed a statement of interest in the case supporting the availability of injunctive relief as pro-competitive. Both sides have now provided additional arguments with a July 16 evidentiary hearing scheduled. Radian particularly argues that the recent Supreme Court cases of *Trump v. CASA, Inc.*, 24A884, 602 U.S. ____ (June 27, 2025) and *Mahmoud v. Taylor*, 24-297, 602 U.S. ____ (June 27, 2025), reaffirm that the key source of law should be founding-era equity practices. The key sticking point for NPE injunctive relief is irreparable harm — and Radian's point is that the founding era cases are clear that ongoing infringement of a property right inherently causes irreparable harm.

- See, Dennis Crouch, *U.S. Government: NPEs Deserve Injunctive Relief when their Patents Are Infringed*, Patently-O (June 26, 2025).
- RADIAN'S RESPONSE TO THE UNITED STATES' STATEMENT OF INTEREST
- RADIAN's NOTICE OF SUPPLEMENTAL AUTHORITY
- SAMSUNG'S RESPONSE TO THE UNITED STATES' STATEMENT OF INTEREST

Radian's argument has some legs — and would be a major transformation if successful. Almost certainly, the "principles of equity" in 35 U.S.C. § 283 incorporate the historical practices of English Chancery and the Founding era. Although *eBay* has been read as eliminating any presumption of irreparable harm due to ongoing infringement, that result is only *implied* by the case. *eBay* itself made historical errors that make it difficult to know whether the court intended to apply a straight historical analysis, or one that is more fictionalized.

I do want to note that this case is at the preliminary injunction stage, and Samsung has argued that the case need not even get to the presumption of irreparable harm because the facts undermine Radian's plea, including a long delay in suing and no current sales of the accused product. A complicating factor in this case is its overlay with standard setting organizations. Radian's patents relate to flash memory, and the company argues that anyone using NVMe Zoned Namespace (ZNS) standard infringes its patents. But, Radian refused to join the NVMe industry consortium (which would have required royalty-free licensing of its inventions).

Even though the case is at an early stage, the US Government weighed in on Radian's side, urging the district court to consider injunctive relief and pushing back against what it views as an unduly restrictive approach to NPE injunctions. As part of its "America's First Antitrust Enforcement" initiative, the

government suggests that large companies (here, a large foreign company) are engaging in "efficient infringement" of patents held by small firms. Looking particularly at standards-development organizations (SDOs) (like the NVMe consortium here), the US Gov't argued that those organizations can become anticompetitive tools when dominated by large implementers with market power, who may collude to avoid paying for patented technology. Limiting injunctions against such infringers, the brief argues, undermines innovation incentives for "Little Tech" – startups, small businesses, and individual inventors. The antitrust concerns here directly implicate the public interest prong of the *eBay* analysis, elevating what is typically the least influential factor in the injunctive relief analysis.

Judge Rodney Gilstrap granted Radian's request for an evidentiary hearing on the PI motion that is currently scheduled for July 16, 2025. In the meantime, the parties have submitted supplemental briefs.

The heart of Radian's motion is the historical argument that traditional equity jurisprudence would have treated ongoing patent infringement as irreparable harm. In other words, when a defendant is violating the plaintiff's property right (here, the exclusive patent right), the "principles of equity" instruct that the harm is irreparable and the remedy at law is inadequate as a matter of course.  This approach seems to call for an overturning of *eBay*, but Radian argues that the text of eBay does not foreclose its arguments. Rather, the problem is that the Federal Circuit has expanded eBay to find no presumption of irreparable harm.  An, in particular, the court refused to explore the historic tradition as required by the Supreme Court's decision.  Radian cites 18th-century English cases and early U.S. decisions that support its historic view. These require some linguistic yoga to fit with eBay.  For instance, *eBay* focused on the four-factor test "historically employed" by courts of equity, but equity courts in 1789 didn't recite a neat four-factor test as we do now. But, at minimum, Radian argues that the post-*eBay* practice of requiring concrete personalized proof of irreparable harm in every case, without any presumption, is a modern invention with no basis in tradition.

A key example case comes from somewhat later, the 1908 *Continental Paper Bag* decision. *Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405 (1908).  In that case, the defendant Continental Paper Bag Company challenged the trial court's jurisdiction to grant an injunction, arguing "that a court of equity has no jurisdiction to grant any prayer of the bill of complaint, even if the said Liddell patent, No. 558,969, were valid, and even if the defendant's paper bag machines were to be held to infringe that patent; because the said patent, No. 558,969, is a mere paper proposition which the complainant has never put into effect or use" and because "it is contrary to equity to suppress a useful and established business, like that which the defendant is prosecuting with its paper bag machines at the request of a complainant which simply owns one paper bag machine patent that has never been employed by that complainant in any way in any paper bag machinery." The defendant essentially argued that equity should not aid a patent holder who failed to practice their invention—a precursor to modern "patent troll" arguments.

The 1908 Supreme Court rejected this contention, holding that a patent provides "the right to exclude others from its use for the time prescribed in the statute, and this right is not dependent on his using the device or affected by his nonuse thereof, and, except in a case where the public interest is involved, the remedy of injunction to prevent infringement of his patent will not be denied merely on the ground of nonuser of the invention." The court emphasized that "[p]atents are property, and entitled to the same rights and sanctions as other property."  In *eBay*, the court positively cited *Continental Paper Bag Co.* in its statement that the district court's categorical denial of injunctive relief was improper. But, the *eBay* Court did not contend with the new tension it implicitly created.

Radian's historical pitch may seem quixotic to some, but that is in the pre-Trump era. In addition to the U.S. government intervention, Radian can also point to two new Supreme Court cases that boost to its historic principles approach:

- *Trump v. CASA, Inc.*, 24A884, 602 U.S. \_\_\_ (June 27, 2025). This shadow docket case dealt with the propriety of nationwide ("universal") injunctions issued by district courts regarding Trump's denial of birthright citizenship. The context was an executive order on citizenship, but the Supreme Court's analysis turned on the scope of federal courts' equitable powers under the Judiciary Act of 1789. The basic holding in the case is that district courts lack authority to grant universal injunctions because such broad relief did not exist in traditional equity at the Founding. The Court emphasized that the Judiciary Act's grant of jurisdiction over "all cases in equity" permits "only those remedies traditionally available in equity," and no more. The takeaway from *CASA* is a strong validation of the argument that courts must look to 18th-century equity precedents to determine the scope and nature of injunctive relief. Back to patents, we know that the the Founding-era default was to issue the injunction to prevent ongoing violations. Nothing in 1789 equity practice required a patent owner to prove "special" injury beyond the infringement itself; rather, the violation of the right *was* the irreparable injury.
- *Mahmoud v. Taylor*, 24-297, 602 U.S. \_\_\_ (2025). In this case, the Supreme Court granted a preliminary injunction to a group of parents challenging a public school board's policy (involving LGBT themed storybooks) on religious freedom ("free exercise") grounds. Beyond the ridiculousness of the culture-war specifics, *Mahmoud* is instructive on irreparable harm. The Court reiterated the principle that certain categories of injuries are inherently irreparable, for example, *"the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."* This language, originally from *Elrod v. Burns* and repeated in other First Amendment cases, was used to justify the preliminary relief. The idea here is that violation of certain rights automatically satisfy the irreparable harm factor, without the need for additional proof of quantifiable injury. Radian draws an analogy: just as courts do not hesitate to find irreparable harm when free speech or religious exercise is being chilled, so too should courts recognize that the *property rights* conferred by patents, when invaded, cause a form of harm that cannot be undone by later monetary awards.

Samsung, views these developments quite differently, arguing that *eBay* settled how injunctions are to be handled in patent cases – via a case-specific, fact-intensive four-factor test – and that nothing in *Mahmoud* or *CASA* allows an end-run around that framework. And, that the government's brief focuses on what the Trump Administration would like for the law to be, not what the law actually is.

Conclusions: *Radian v. Samsung* case represents more than just another NPE seeking an injunction— it's a potential inflection point for patent law. If Judge Gilstrap accepts Radian's historical equity argument, it could trigger the most significant shift in injunctive relief doctrine since *eBay* itself. The convergence of factors is notable: a government actively supporting NPE rights, recent Supreme Court decisions emphasizing founding-era equity principles, and a case positioned at the intersection of patent law and antitrust policy.

We'll keep an eye on the July 16 hearing to see how seriously the court engages with the historical evidence and legal issues rather than focusing on Samsung's factual arguments.

## About Dennis Crouch

Law Professor at the University of Missouri School of Law. View all posts by Dennis Crouch →

Show comments